**EXHIBIT C**



## MODIFICATION AGREEMENT

Loan Number: ████2763

Dear DAWSON MICHAEL MOORE:

I agree that the payment date will change from 07/21/2025 to 10/21/2025, and the maturity date shall be extended from 07/21/2025 to 10/21/2025. The payment amount shall remain the same.

It is understood and agreed that the change in frequency of payments, installment payment dates, payment amount or change of date shall not modify the provisions of the loan instruments or the rights and liabilities of the parties, hereto, except as expressly provided.

**BY SIGNING THIS MODIFICATION, THE PARTIES AFFIRM THAT NO UNWRITTEN ORAL AGREEMENT EXISTS BETWEEN THEM.**

Dated 10-1-2025

*/s/ Dawson Moore*
DAWSON MICHAEL MOORE



| | Date of Notice |
|---|---|
| | September 24, 2025 |

DAWSON MICHAEL MOORE

## MODIFICATION AGREEMENT

Loan Number: ████2763

Dear DAWSON MICHAEL MOORE:

I agree that the payment date will change from 07/21/2025 to 10/21/2025, and the maturity date shall be extended from 07/21/2025 to 10/21/2025. The payment amount shall remain the same.

It is understood and agreed that the change in frequency of payments, installment payment dates, payment amount or change of date shall not modify the provisions of the loan instruments or the rights and liabilities of the parties, hereto, except as expressly provided.

**BY SIGNING THIS MODIFICATION, THE PARTIES AFFIRM THAT NO UNWRITTEN ORAL AGREEMENT EXISTS BETWEEN THEM.**

Dated _____

_____
DAWSON MICHAEL MOORE

_____

Approved this 24th day of Sept, 2025.

Kansas State Bank, by: _____

ROGER MAXWELL
(785)242-3600

The Kansas State Bank | Ottawa & Baldwin City
236 North Main Street | P.O. Box 720 | Ottawa, Kansas 66067-0720
Tel: 785-242-3600 | Fax: 785-242-4114

| LOAN NUMBER | LOAN NAME | ACCT. NUMBER | NOTE DATE | INITIALS |
|---|---|---|---|---|
| ▉2763 | DAWSON MICHAEL MOORE | ▉7460 | 01/21/25 | RGM |
| NOTE AMOUNT | INDEX (w/Margin) | RATE | MATURITY DATE | LOAN PURPOSE |
| $85,000.00 | Not Applicable | 9.500% | 07/21/25 | Agricultural |

Creditor Use Only

# PROMISSORY NOTE AND SECURITY AGREEMENT
(Agricultural - Revolving Draw)

**DATE AND PARTIES.** The date of this Promissory Note and Security Agreement (Loan Agreement) is January 21, 2025. The parties and their addresses are:

**LENDER:**
  **KANSAS STATE BANK**
  P.O. Box 720
  236 N. Main
  Ottawa, KS 66067
  Telephone: 785-242-3600

**BORROWER:**
  **DAWSON MICHAEL MOORE**

**1. DEFINITIONS.** As used in this Loan Agreement, the terms have the following meanings:

  **A. Pronouns.** The pronouns "I," "me," and "my" refer to each Borrower signing this Loan Agreement and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this Loan Agreement. "You" and "Your" refer to the Lender, any participants or syndicators, successors and assigns, or any person or company that acquires an interest in the Loan.

  **B. Loan Agreement.** Loan Agreement refers to this combined Note and Security Agreement, and any extensions, renewals, modifications and substitutions of this Loan Agreement.

  **C. Loan.** Loan refers to this transaction generally, including obligations and duties arising from the terms of all documents prepared or submitted for this transaction such as applications, security agreements, disclosures or notes, and this Loan Agreement.

  **D. Loan Documents.** Loan Documents refer to all the documents executed as a part of or in connection with the Loan.

  **E. Property.** Property is any property, real, personal or intangible, that secures my performance of the obligations of this Loan.

  **F. Percent.** Rates and rate change limitations are expressed as annualized percentages.

  **G. Dollar Amounts.** All dollar amounts will be payable in lawful money of the United States of America.

**2. REFINANCING.** This Loan Agreement will pay off the following described note(s):

| Note Date | Note Number | Note Amount |
|---|---|---|
| July 15, 2024 | #▉2627 | $60,000.00 |

The remaining balance of the note listed in the table above is $59,195.62.

**3. PROMISE TO PAY.** For value received, I promise to pay you or your order, at your address, or at such other location as you may designate, amounts advanced from time to time under the terms of this Loan Agreement up to the maximum outstanding principal balance of **$85,000.00** (**Principal**), plus interest from the date of disbursement, on the unpaid outstanding Principal balance until this Loan Agreement is paid in full and you have no further obligations to make advances to me under the Loan.

I may borrow up to the Principal amount more than one time.

**4. ADVANCES.** Advances under this Loan Agreement are made according to the following terms and conditions.

  **A. Initial Advance.** On January 21, 2025 I will receive an initial advance of $59,563.92.

  **B. Requests for Advances.** My requests are a warranty that I am in compliance with all the Loan Documents. When required by you for a particular method of advance, my requests for an advance must specify the requested amount and the date and be accompanied with any agreements, documents, and instruments that you require for the Loan. Any payment by you of any check, share draft or other charge may, at your option, constitute an advance on the Loan to me. All advances will be made in United States dollars. I will indemnify you

and hold you harmless for your reliance on any request for advances that you reasonably believe to be genuine. To the extent permitted by law, I will indemnify you and hold you harmless when the person making any request represents that I authorized this person to request an advance even when this person is unauthorized or this person's signature is not genuine.

I or anyone I authorize to act on my behalf may request advances by the following methods.

    (1) I make a request in person.

    (2) I make a request by phone.

    (3) I write a check or share draft.

    (4) EMAIL

**C. Advance Limitations.** In addition to any other Loan conditions, requests for, and access to, advances are subject to the following limitations.

    (1) **Discretionary Advances.** You will make all Loan advances at your sole discretion.

    (2) **Advance Amount.** Subject to the terms and conditions contained in this Loan Agreement, advances will be made in exactly the amount I request.

    (3) **Maximum Frequency.** Advances will be made no more frequently than Daily.

    (4) **Disbursement of Advances.** On my fulfillment of this Loan Agreement's terms and conditions, you will disburse the advance in any manner as you and I agree.

    (5) **Credit Limit.** I understand that you will not ordinarily grant a request for an advance that would cause the unpaid principal of my Loan to be greater than the Principal limit. You may, at your option, grant such a request without obligating yourselves to do so in the future. I will pay any overadvances in addition to my regularly scheduled payments. I will repay any overadvance by repaying you in full within days after the overadvance occurs.

    (6) **Records.** Your records will be conclusive evidence as to the amount of advances, the Loan's unpaid principal balances and the accrued interest.

**D. Additional Conditions.** PER LENDER APPROVAL

**5. INTEREST.** Interest will accrue on the unpaid Principal balance of this Loan Agreement at the rate of **9.500 percent (Interest Rate)**.

**A. Post-Maturity Interest.** After maturity or acceleration, interest will accrue on the unpaid Principal balance of this Loan Agreement at the Interest Rate in effect from time to time, until paid in full.

**B. Maximum Interest Amount.** Any amount assessed or collected as interest under the terms of this Loan Agreement will be limited to the maximum lawful amount of interest allowed by applicable law. Amounts collected in excess of the maximum lawful amount will be applied first to the unpaid Principal balance. Any remainder will be refunded to me.

**C. Statutory Authority.** The amount assessed or collected on this Loan Agreement is authorized by the Kansas usury laws under Kan. Stat. Ann. § 16-207.

**D. Accrual.** Interest accrues using an Actual/360 days counting method.

**6. ADDITIONAL CHARGES.** As additional consideration, I agree to pay, or have paid, these additional fees and charges.

**A. Nonrefundable Fees and Charges.** The following fees are earned when collected and will not be refunded if I prepay this Loan Agreement before the scheduled maturity date.

    **Vendor Single Interest Insurance.** A(n) Vendor Single Interest Insurance fee of $35.00 payable from the loan proceeds.

    **Loan Origination.** A(n) Loan Origination fee of $300.00 payable from the loan proceeds.

    **Filing.** A(n) Filing fee of $23.00 payable from the loan proceeds.

    **Credit Report.** A(n) Credit Report fee of $10.30 payable from the loan proceeds.

**7. REMEDIAL CHARGES.** In addition to interest or other finance charges, I agree that I will pay these additional fees based on my method and pattern of payment. Additional remedial charges may be described elsewhere in this Loan Agreement.

**A. Late Charge.** If a payment is more than **10** days late, I will be charged **5.000** percent of the Unpaid Portion of Payment. However, this charge will not be greater than **$25.00**. I will pay this late charge promptly but only once for each late payment.

**8. PAYMENT.** I agree to pay this Loan Agreement in a single payment of all unpaid Principal and accrued interest on July 21, 2025.

Payments will be rounded to the nearest $.01. With the final payment I also agree to pay any additional fees or charges owing and the amount of any advances you have made to others on my behalf. Payments scheduled to be paid on the 29th, 30th or 31st day of a month that contains no such day will, instead, be made on the last day of such month.

Each payment I make on this Loan Agreement will be applied first to interest that is due, then to principal that is due, and finally to late charges that are due. If you and I agree to a different application of payments, we will describe our agreement on this Loan Agreement.

**9. PREPAYMENT.** I may prepay this Loan in full or in part at any time. Any partial prepayment will not excuse any later scheduled payments until I pay in full.

**10. LOAN PURPOSE.** The purpose of this Loan is RENEWAL WITH INCREASE IN LINE OF CREDIT.

**11. SECURITY.** The Loan is secured by Property described in the SECURITY AGREEMENT section of this Loan Agreement.

**12. SECURITY AGREEMENT.**

**A. Secured Debts.** This Security Agreement will secure the following debts (Secured Debts), together with all extensions, renewals, refinancings, modifications and replacements of these debts:

    (1) **Sums Advanced under the terms of this Loan Agreement.** All sums advanced and expenses incurred by you under the terms of this Loan Agreement.

---



(2) All Debts. All present and future debts of all Borrowers owing to you, even if this Security Agreement is not specifically referenced, the future debts are also secured by other collateral, or if the future debt is unrelated to or of a different type than this debt. If more than one person signs this Security Agreement, each agrees that it will secure debts incurred either individually or with others who may not sign this Security Agreement. Nothing in this Security Agreement constitutes a commitment to make additional or future loans or advances. Any such commitment must be in writing.

This Security Agreement will not secure any debt which is also secured by real property or for which a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. In addition, this Security Agreement will not secure any other debt if, with respect to such other debt, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

**B. Limitations on Cross-collateralization.** The Line of Credit is not secured by a previously executed security instrument if a non-possessory, non-purchase money security interest is created in "household goods" in connection with a "consumer loan," as those terms are defined by federal law governing unfair and deceptive credit practices. The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Real Estate Settlement Procedures Act, (Regulation X), that are required for loans secured by the Property or if, as a result, the other debt would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

The Line of Credit is not secured by a previously executed security instrument if you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act, (Regulation Z), that are required for loans secured by the Property.

**C. Security Interest.** To secure the payment and performance of the Secured Debts, I grant you a security interest in all of the Property described in this Security Agreement that I own or have sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products from the Property (including, but not limited to, all parts, accessories, repairs, replacements, improvements, and accessions to the Property). Property is all the collateral given as security for the Secured Debts and described in this Security Agreement, and includes all obligations that support the payment or performance of the Property. "Proceeds" includes cash proceeds, non-cash proceeds and anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property.

Property also includes any original evidence of title or ownership whether evidenced by a certificate of title or ownership, a manufacturer's statement of origin or other document when the Property is titled under any federal or state law. I will deliver the title documents and properly execute all title documents as necessary to reflect your security interest.

This Security Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and you are no longer obligated to advance funds to me under any loan or credit agreement.

**D. Property Description.** The Property subject to this Security Agreement is described as follows:

(1) Equipment. All equipment including, but not limited to, all machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and recordkeeping equipment, and parts and tools. All equipment described in a list or schedule which I give to you will also be included in the Property, but such a list is not necessary for a valid security interest in my equipment. "Equipment" means goods other than inventory, farm products, or consumer goods. The term "Equipment" is as defined by the Uniform Commercial Code and further as modified or amended by the laws of the jurisdiction which governs this transaction.

(2) Motor Vehicle, Mobile Home, Sport Craft, or Trailer. A Motor Vehicle of Make: DODGE RAM, Year: 2014, Model: 3500 DUALLY, VIN: 3C63RRBLXEG196893, and additionally described: VIN#3C63RRBLXEG196893 2014 DODGE RAM 3500 DUALLY W/BALE BED.

A Motor Vehicle of Make: FORD , Year: 2015, Model: F-250 SUPER DUTY, VIN: 1FT7X2B69FEA39737, and additionally described: VIN#1FT7X2B69FEA39737 2015 FORD F-250 SUPER DUTY.

A Trailer of Make: NEVILLE BUILT TRAILERS, Year: 2016, Model: NVBTGRN , VIN/Serial No.: 1N9GT3428GF175977, and additionally described: 2016 NEVILLE BUILT TRAILERS, MODEL# NVBTGRN, 34 FT GRAIN .

A Trailer of Make: LOAD TRAIL LLC, Year: 2022, Model: TRA REM TILT DECK TR, VIN/Serial No.: 4ZETD2226N1275817, and additionally described: 2022 LOAD TRAIL LLC MODEL TRA REM TITLE DECK TRAILER, VIN# 4ZETD2226N1275817.

**E. Duties Toward Property.**

(1) Protection of Secured Party's Interest. I will defend the Property against any other claim. I agree to do whatever you require to protect your security interest and to keep your claim in the Property ahead of the claims of other creditors. I will not do anything to harm your position.

I will keep books, records and accounts about the Property and my business in general. I will let you examine these and make copies at any reasonable time. I will prepare any report or accounting you request which deals with the Property.

(2) Use, Location, and Protection of the Property. I will keep the Property in my possession and in good repair. I will use it only for agricultural purposes. I will not change this specified use without your prior written consent. You have the right of reasonable access to inspect the Property and I will immediately inform you of any loss or damage to the Property. I will not cause or permit waste to the Property.

I will keep the Property at my address listed in the DATE AND PARTIES section unless we agree I may keep it at another location. If the Property is to be used in other states, I will give you a list of those states. The location of the Property is given to aid in the identification of the Property. It does not in any way limit the scope of the security interest granted to you. I will notify you in writing and obtain your prior written consent to any change in location of any of the Property. I will not use the Property in violation of any law. I will notify you in writing prior to any change in my name or address.

Until the Secured Debts are fully paid and this Security Agreement is terminated, I will not grant a security interest in any of the Property without your prior written consent. I will pay all taxes and assessments levied or assessed against me or the Property and provide timely proof of payment of these taxes and assessments upon request.



(3) **Selling, Leasing or Encumbering the Property.** I will not sell, offer to sell, lease, or otherwise transfer or encumber the Property without your prior written permission. Any disposition of the Property contrary to this Security Agreement will violate your rights. Your permission to sell the Property may be reasonably withheld without regard to the creditworthiness of any buyer or transferee. I will not permit the Property to be the subject of any court order affecting my rights to the Property in any action by anyone other than you. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, I will note your security interest on the face of the chattel paper or instruments.

(4) **Additional Duties Specific to Motor Vehicles, Sport Craft, or Trailers.** So long as I am not in default under this Security Agreement, the Motor Vehicle, Sport Craft, or Trailer portion of the Property will not be restricted to a specific location and may be moved as necessary during ordinary use. However, they may not be taken out of state permanently nor removed from the United States or Canada without your prior written consent.

**F. Authority To Perform.** I authorize you to do anything you deem reasonably necessary to protect the Property, and perfect and continue your security interest in the Property. If I fail to perform any of my duties under this Loan Agreement or any other security interest, you are authorized, without notice to me, to perform the duties or cause them to be performed.

These authorizations include, but are not limited to, permission to:

(1) pay and discharge taxes, liens, security interests or other encumbrances at any time levied or placed on the Property.

(2) pay any rents or other charges under any lease affecting the Property.

(3) order and pay for the repair, maintenance and preservation of the Property.

(4) file any financing statements on my behalf and pay for filing and recording fees pertaining to the Property.

(5) place a note on any chattel paper indicating your interest in the Property.

(6) take any action you feel necessary to realize on the Property, including performing any part of a contract or endorsing it in my name.

(7) handle any suits or other proceedings involving the Property in my name.

(8) prepare, file, and sign my name to any necessary reports or accountings.

(9) make an entry on my books and records showing the existence of this Agreement.

If you perform for me, you will use reasonable care. If you exercise the care and follow the procedures that you generally apply to the collection of obligations owed to you, you will be deemed to be using reasonable care. Reasonable care will not include: any steps necessary to preserve rights against prior parties; the duty to send notices, perform services or take any other action in connection with the management of the Property; or the duty to protect, preserve or maintain any security interest given to others by me or other parties. Your authorization to perform for me will not create an obligation to perform and your failure to perform will not preclude you from exercising any other rights under the law or this Loan Agreement. All cash and non-cash proceeds of the Property may be applied by you only upon your actual receipt of cash proceeds against such of the Secured Debts, matured or unmatured, as you determine in your sole discretion.

If you come into actual or constructive possession of the Property, you will preserve and protect the Property. For purposes of this paragraph, you will be in actual possession of the Property only when you have physical, immediate and exclusive control over the Property and you have affirmatively accepted that control. You will be in constructive possession of the Property only when you have both the power and the intent to exercise control over the Property.

**G. Name and Location.** My name indicated in the DATE AND PARTIES section is my exact legal name. My principal residence is located in Kansas. I will provide verification of registration and location upon your request. I will provide you with at least 30 days notice prior to any change in my name, address, or state of organization or registration.

**H. Perfection of Security Interest.** I authorize you to file a financing statement and/or security agreement, as appropriate, covering the Property. I will comply with, facilitate, and otherwise assist you in connection with obtaining perfection or control over the Property for purposes of perfecting your security interest under the Uniform Commercial Code. I agree to pay all actual costs of terminating your security interest.

13. **DEFAULT.** I will be in default if any of the following events (known separately and collectively as an Event of Default) occur:

A. **Payments.** I fail to make a payment in full when due.

B. **Insolvency or Bankruptcy.** The death, dissolution or insolvency of, appointment of a receiver by or on behalf of, application of any debtor relief law, the assignment for the benefit of creditors by or on behalf of, the voluntary or involuntary termination of existence by, or the commencement of any proceeding under any present or future federal or state insolvency, bankruptcy, reorganization, composition or debtor relief law by or against me or any co-signer, endorser, surety or guarantor of this Loan Agreement or any other obligations I have with you.

C. **Death or Incompetency.** I die or am declared legally incompetent.

D. **Failure to Perform.** I fail to perform any condition or to keep any promise or covenant of this Loan Agreement.

E. **Other Documents.** A default occurs under the terms of any other Loan Document.

F. **Other Agreements.** I am in default on any other debt or agreement I have with you.

G. **Misrepresentation.** I make any verbal or written statement or provide any financial information that is untrue, inaccurate, or conceals a material fact at the time it is made or provided.

H. **Judgment.** I fail to satisfy or appeal any judgment against me.

I. **Forfeiture.** The Property is used in a manner or for a purpose that threatens confiscation by a legal authority.

J. **Name Change.** I change my name or assume an additional name without notifying you before making such a change.

K. **Property Transfer.** I transfer all or a substantial part of my money or property.

L. **Property Value.** You determine in good faith that the value of the Property has declined or is impaired.

DAWSON MICHAEL MOORE
Kansas Promissory Note and Security Agreement
KS/4XXXXXXXX000000000003477044012125N

Wolters Kluwer Financial Services, Inc. ©1996, 2025 Bankers Systems™

Initials 
Page 4

M. **Erosion.** Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.

N. **Insecurity.** You determine in good faith that a material adverse change has occurred in my financial condition from the conditions set forth in my most recent financial statement before the date of this Loan Agreement or that the prospect for payment or performance of the Loan is impaired for any reason.

**14. DUE ON SALE OR ENCUMBRANCE.** You may, at your option, declare the entire balance of this Loan Agreement to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**15. WAIVERS AND CONSENT.** To the extent not prohibited by law, I waive protest, presentment for payment, demand, notice of acceleration, notice of intent to accelerate and notice of dishonor.

A. **Additional Waivers By Borrower.** In addition, I, and any party to this Loan Agreement, to the extent permitted by law, consent to certain actions you may take, and generally waive defenses that may be available based on these actions or based on the status of a party to this Loan Agreement.

(1) You may renew or extend payments on this Loan Agreement, regardless of the number of such renewals or extensions.

(2) You may release any Borrower, endorser, guarantor, surety, accommodation maker or any other co-signer.

(3) You may release, substitute or impair any Property securing this Loan Agreement.

(4) You, or any institution participating in this Loan Agreement, may invoke your right of set-off.

(5) You may enter into any sales, repurchases or participations of this Loan Agreement to any person in any amounts and I waive notice of such sales, repurchases or participations.

(6) I agree that any of us signing this Loan Agreement as a Borrower is authorized to modify the terms of this Loan Agreement or any instrument securing, guarantying or relating to this Loan Agreement.

B. **No Waiver By Lender.** Your course of dealing, or your forbearance from, or delay in, the exercise of any of your rights, remedies, privileges or right to insist upon my strict performance of any provisions contained in this Loan Agreement, shall not be construed as a waiver by you, unless any such waiver is in writing and is signed by you.

C. **Waiver of Claims.** I waive all claims for loss or damage caused by your acts or omissions where you acted reasonably and in good faith.

**16. REMEDIES.** After I default, you may at your option do any one or more of the following.

A. **Acceleration.** You may make all or any part of the amount owing by the terms of this Loan Agreement immediately due.

B. **Sources.** You may use any and all remedies you have under state or federal law or in any Loan Document.

C. **Insurance Benefits.** You may make a claim for any and all insurance benefits or refunds that may be available on my default.

D. **Payments Made On My Behalf.** Amounts advanced on my behalf will be immediately due and may be added to the balance owing under the terms of this Loan Agreement, and accrue interest at the highest post-maturity interest rate.

E. **Termination.** You may terminate my rights to obtain advances or other extensions of credit by any of the methods provided in this Loan Agreement.

F. **Attachment.** You may attach or garnish my wages or earnings.

G. **Set-Off.** You may use the right of set-off. This means you may set-off any amount due and payable under the terms of this Loan Agreement against any right I have to receive money from you.

My right to receive money from you includes any deposit or share account balance I have with you; any money owed to me on an item presented to you or in your possession for collection or exchange; and any repurchase agreement or other non-deposit obligation. "Any amount due and payable under the terms of this Loan Agreement" means the total amount to which you are entitled to demand payment under the terms of this Loan Agreement at the time you set-off.

Subject to any other written contract, if my right to receive money from you is also owned by someone who has not agreed to pay this Loan Agreement, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement.

Your right of set-off does not apply to an account or other obligation where my rights arise only in a representative capacity. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set-off against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

H. **Assembly of Property.** You may require me to gather the Property and make it available to you in a reasonable fashion.

I. **Repossession.** You may repossess the Property so long as the repossession does not involve a breach of the peace. You may sell, lease or otherwise dispose of the Property as provided by law. You may apply what you receive from the disposition of the Property to your expenses, your attorneys' fees and legal expenses (where not prohibited by law), and any debt I owe you. If what you receive from the disposition of the Property does not satisfy the debt, I will be liable for the deficiency (where permitted by law). In some cases, you may keep the Property to satisfy the debt.

Where a notice is required, I agree that ten days prior written notice sent by first class mail or via a nationally recognized overnight courier to my address listed in this Loan Agreement will be reasonable notice to me under the Kansas Uniform Commercial Code. If the Property is perishable or threatens to decline speedily in value, you may, without notice to me, dispose of any or all of the Property in a commercially reasonable manner at my expense following any commercially reasonable preparation or processing (where permitted by law).

If any items not otherwise subject to this Loan Agreement are contained in the Property when you take possession, you may hold these items for me at my risk and you will not be liable for taking possession of them (where permitted by law).

J. **Use and Operation.** You may enter upon my premises and take possession of all or any part of my property for the purpose of preserving the Property or its value, so long as you do not breach the peace. You may use and operate my property for the length of time you feel is necessary to protect your interest, all without payment or compensation to me.

DAWSON MICHAEL MOORE
Kansas **Promissory Note and Security Agreement**
KS/4XXXXXXXX0000000000003477044012125N

Wolters Kluwer Financial Services, Inc. ®1996, 2025 Bankers Systems™

Initials 
Page 5

K. **Waiver.** Except as otherwise required by law, by choosing any one or more of these remedies you do not give up your right to use any other remedy. You do not waive a default if you choose not to use a remedy. By electing not to use any remedy, you do not waive your right to later consider the event a default and to use any remedies if the default continues or occurs again.

17. **COLLECTION EXPENSES AND ATTORNEYS' FEES.** On or after the occurrence of an Event of Default, to the extent permitted by law, I agree to pay all expenses of collection, enforcement or protection of your rights and remedies under this Loan Agreement or any other Loan Document. Expenses include, but are not limited to, attorneys' fees, court costs and other legal expenses. These expenses are due and payable immediately. If not paid immediately, these expenses will bear interest from the date of payment until paid in full at the highest interest rate in effect as provided for in the terms of this Loan Agreement. All fees and expenses will be secured by the Property I have granted to you, if any. In addition, to the extent permitted by the United States Bankruptcy Code, I agree to pay the reasonable attorneys' fees incurred by you to protect your rights and interests in connection with any bankruptcy proceedings initiated by or against me.

18. **COMMISSIONS.** I understand and agree that you (or your affiliate) will earn commissions or fees on any insurance products, and may earn such fees on other services that I buy through you or your affiliate.

19. **WARRANTIES AND REPRESENTATIONS.** I have the right and authority to enter into this Loan Agreement. The execution and delivery of this Loan Agreement will not violate any agreement governing me or to which I am a party.

   A. **Ownership of Property.** I represent that I own all of the Property. Your claim to the Property is ahead of the claims of any other creditor, except as disclosed in writing to you prior to any advance on the Secured Debts. I represent that I am the original owner of the Property and, if I am not, that I have provided you with a list of prior owners of the Property.

20. **INSURANCE.** I agree to obtain the insurance described in this Loan Agreement.

   A. **Property Insurance.** I agree to keep the Property insured against the risks reasonably associated with the Property. I will maintain this insurance in the amounts you require. This insurance will last until the Property is released from this Loan Agreement. I may choose the insurance company, subject to your approval, which will not be unreasonably withheld.

   I will have the insurance company name you as loss payee on any insurance policy. I will give you and the insurance company immediate notice of any loss. You may apply the insurance proceeds toward what is owed on the Secured Debts. You may require added security as a condition of permitting any insurance proceeds to be used to repair or replace the Property.

   If you acquire the Property in damaged condition, my right to any insurance policies and proceeds will pass to you to the extent of the Secured Debts.

   I will immediately notify you of cancellation or termination of insurance. If I fail to keep the Property insured, you may obtain insurance to protect your interest in the Property and I will pay for the insurance on your demand. You may demand that I pay for the insurance all at once, or you may add the insurance premiums to the balance of the Secured Debts and charge interest on it at the rate that applies to the Secured Debts. This insurance may include lesser or greater coverages than originally required of me, may be written by a company other than one I would choose, and may be written at a higher rate than I could obtain if I purchased the insurance. This insurance coverage does not satisfy any liability or property insurance that may be mandated by applicable state or federal law. I acknowledge and agree that you or one of your affiliates may receive commissions on the purchase of this insurance.

21. **APPLICABLE LAW.** This Loan Agreement is governed by the laws of Kansas, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law. In the event of a dispute, the exclusive forum, venue and place of jurisdiction will be in Kansas, unless otherwise required by law.

22. **JOINT AND SEVERAL LIABILITY AND SUCCESSORS.** My obligation to pay the Loan is independent of the obligation of any other person who has also agreed to pay it. You may sue me alone, or anyone else who is obligated on the Loan, or any number of us together, to collect the Loan. Extending the Loan or new obligations under the Loan, will not affect my duty under the Loan and I will still be obligated to pay the Loan. This Loan Agreement shall inure to the benefit of and be enforceable by you and your successors and assigns and shall be binding upon and enforceable against me and my successors and assigns.

23. **AMENDMENT, INTEGRATION AND SEVERABILITY.** This Loan Agreement may not be amended or modified by oral agreement. No amendment or modification of this Loan Agreement is effective unless made in writing. This Loan Agreement and the other Loan Documents are the complete and final expression of the agreement. If any provision of this Loan Agreement is unenforceable, then the unenforceable provision will be severed and the remaining provisions will still be enforceable. No present or future agreement securing any other debt I owe you will secure the payment of this Loan if, with respect to this loan, you fail to fulfill any necessary requirements or fail to conform to any limitations of the Truth in Lending Act (Regulation Z) or the Real Estate Settlement Procedures Act (Regulation X) that are required for loans secured by the Property or if, as a result, this Loan would become subject to Section 670 of the John Warner National Defense Authorization Act for Fiscal Year 2007.

24. **INTERPRETATION.** Whenever used, the singular includes the plural and the plural includes the singular. The section headings are for convenience only and are not to be used to interpret or define the terms of this Loan Agreement.

25. **NOTICE, FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Unless otherwise required by law, any notice will be given by delivering it or mailing it by first class mail or via a nationally recognized overnight courier to the appropriate party's address listed in the DATE AND PARTIES section, or to any other address designated in writing. Notice to one Borrower will be deemed to be notice to all Borrowers. I will inform you in writing of any change in my name, address or other application information. I will provide you any correct and complete financial statements or other information you request. I agree to sign, deliver, and file any additional documents or certifications that you may consider necessary to perfect, continue, and preserve my obligations under this Loan and to confirm your lien status on any Property. Time is of the essence.

26. **CREDIT INFORMATION.** I agree to supply you with whatever information you reasonably feel you need to decide whether to continue this Loan. You will make requests for this information without undue frequency, and will give me reasonable time in which to supply the information.

27. **ERRORS AND OMISSIONS.** I agree, if requested by you, to fully cooperate in the correction, if necessary, in the reasonable discretion of you of any and all loan closing documents so that all documents accurately describe the loan between you and me. I agree to assume all

DAWSON MICHAEL MOORE
Kansas **Promissory Note and Security Agreement**
KS/4XXXXXXXX00000000003477044012125N

Wolters Kluwer Financial Services, Inc. ©1996, 2025 Bankers Systems™

Initials 
Page 6

costs including by way of illustration and not limitation, actual expenses, legal fees and marketing losses for failing to reasonably comply with your requests within thirty (30) days.

**28. SIGNATURES.** By signing, I agree to the terms contained in this Loan Agreement. I also acknowledge receipt of a copy of this Loan Agreement.

BORROWER:

X _____
DAWSON MICHAEL MOORE

LENDER:

Kansas State Bank

By _____ Date 1/21/25
ROGER MAXWELL, PRESIDENT

_____ Date _____
(Attest)